UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-cv-3482-RJD-SIL |
| Plaintiff, | The Hon. Raymond J. Dearie, U.S.D.J. |
| v. | The Hon. Steven I. Locke, U.S.M.J. |
| GEORGES BRIGUET, | |
| Defendant. | |

# PLAINTIFF UNITED STATES' MOTIONS *IN LIMINE*

**TABLE OF CONTENTS**

I. **Mr. Briguet's bank records are admissible.** ................................................................. 1

    A.  The bank records are highly relevant. ................................................................. 1

    B.  The bank records do not pose a risk of unfair prejudice. ..................................... 4

    C.  The bank records are business records and thus are not excludible as hearsay. ................. 5

    D.  Alternatively, the bank records are admissible under the residual hearsay exception. ......... 7

    E.  Mr. Briguet's statements memorialized in the bank records are also admissible. ................ 9

    F.  Addressing admissibility now will facilitate an efficient trial. ........................................... 9

II. **The parties and witnesses should be barred from disclosing the amount of the penalty at issue to the jury.** ................................................................................. 10

III. **The United States should be permitted to examine Kenneth Erdheim, Mr. Briguet's long-time accountant, with leading questions.** ................................................. 13

IV. **Conclusion** ................................................................................................................. 15

The United States submits this memorandum in support of its motions *in limine*: (1) for an order that Mr. Briguet's bank records are admissible; (2) to bar the parties and witnesses from disclosing to the jury the amount of the penalty sought in this action; and (3) for an order that the United States may use leading questions to examine Mr. Briguet's accountant, Kenneth Erdheim, because he is identified with an adverse party.  Each is addressed below.

**I.     Mr. Briguet's bank records are admissible.**

The government's proposed exhibits 4 through 8 are bank records for Mr. Briguet's account obtained from UBS pursuant to the U.S.-Switzerland Tax Treaty.  Mr. Briguet does not contest that these documents are authentic, but objects to their admissibility on the grounds that they are irrelevant (F.R.E. 401), the danger of unfair prejudice outweighs any probative value (F.R.E. 403), and, as to certain of the documents, that they are or include hearsay (F.R.E. 802). (*See* dkt. no. 25 at 8, PageID.67).  These objections are baseless.  The documents are plainly relevant to this matter, present minimal risk of unfair prejudice, and are admissible as business records (F.R.E. 803(6)) or, alternatively, under the residual exception (F.R.E. 807).  The statements made by Mr. Briguet recorded in the bank records are party admissions and therefore not subject to exclusion as hearsay (F.R.E. 801(d)(2)(A)).

**A.     The bank records are highly relevant.**

There is no dispute as to the background facts of this case:  Mr. Briguet owned a foreign bank account with UBS, the largest bank in Switzerland, in 2008 and prior years.  In 2008, he moved his assets to Clariden Leu, another Swiss bank.  Mr. Briguet was required to pay tax on the earnings in the account, and he was required to report that account to the U.S. government on an FBAR.  He did neither.  The sole question for the jury is whether that failure was willful.

The government contends that Mr. Briguet intentionally sought to conceal his accounts. Mr. Briguet's defense appears to be that he was minimally involved with the accounts, that they

were managed by his brother and he knew little or nothing about them, and that he did not intentionally hide them from the government.

Each of the government's proposed bank record exhibits bears directly on this issue and rebuts Mr. Briguet's defenses:[1]

- Exhibit 4 (attachment B) is a bank document showing Mr. Briguet's monthly balances and annual revenue. It shows that the balance in Mr. Briguet's account fluctuated between approximately $5,000,000 and $8,000,000. The second page of the document shows that Mr. Briguet earned between tens and hundreds of thousands of dollars in those accounts during the year at issue and the years immediately prior. This rebuts any argument that the account was an afterthought or that Mr. Briguet was not conscious of the account when he spoke with his accountant and when he signed his tax returns.

- Exhibit 5 (attachment C) is a record of contacts that bank employees had with Mr. Briguet and his brother concerning Mr. Briguet's account. The log shows that Mr. Briguet was personally involved with his accounts and specifically shows that he sought to hide them from the government. For example, page 5 memorializes a conversation with a UBS representative in which Mr. Briguet stated that he had learned UBS was preparing to disclose the names of tax evaders to the U.S. government. It states that Mr. Briguet "consulted a lawyer, aware of our change of

---

[1] Portions of these documents are in French, and the government has obtained certified translations of the relevant pages. Attached are excerpts from the documents and certified translations. These documents are redacted in accordance with Rule 5.2 of the Federal Rules of Civil Procedure. The government can provide complete and unredacted documents at the Court's convenience.

policy, and fearing for the confidentiality of his account," had decided to close his account and move his money to another Swiss bank. (Attachment C.2 at -1070.)

- Exhibit 6 (attachment D) is a correspondence file, including forms signed by Mr. Briguet. One of these forms – which bears Mr. Briguet's signature – states: "I wish to prevent my identity from being disclosed to the US tax authorities." (Attachment D.2 at -1086.) This document is clearly highly probative of the key question for the jury – whether Mr. Briguet intentionally failed to report his account to the U.S. government.

- Exhibit 7 (attachment E) comprises notices of trades executed by UBS on Mr. Briguet's behalf. It includes a letter from Mr. Briguet confirming that he wants to close his account, as is consistent with his statement recorded in exhibit 5. (Attachment E.2 at -1109.)

- Exhibit 8 (attachment F) is a collection of income statements showing significant income in the account. These again demonstrate that the account was material to Mr. Briguet and support the inference that Mr. Briguet was aware of his wealth and thus that he made a deliberate decision not to disclose the account.

The bank records are highly relevant. They demonstrate that Mr. Briguet intended to hide his accounts from the government – the core issue in this case. They show that Mr. Briguet was earning hundreds of thousands of dollars a year and that he sought to hide that money from the IRS. This is clear, direct evidence that bears directly on the specific question that the jury must decide. There is no basis to exclude the documents as irrelevant.

### B. The bank records do not pose a risk of unfair prejudice.

The bank records do not present a risk of unfair prejudice because they do not suggest to the jury that they evaluate the case on any inappropriate basis. Rule 403 permits the exclusion of documents for which the probative value is substantially outweighed by a danger of unfair prejudice. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." F.R.E. 403 Advisory Committee Notes. "'Rule 403 favors admissibility: evidence is only excluded when its probative value is *substantially outweighed* by the prejudice of jury confusion.'" *United States v. Ashburn*, No. 11-cr-0303, 2015 WL 136098, at *6 (E.D.N.Y. Jan. 9, 2015) (quoting *United States v. White*, 692 F.3d 235, 247 (2d Cir. 2012)) (emphasis in *White*).

The documents are unfavorable to Mr. Briguet, but that is because they are highly probative, not because they are unfairly prejudicial. The documents are not inflammatory, nor do they contain legal argument or material that would appeal to emotion or otherwise lead the jury to make its decision on an improper basis. Nor are they confusing, misleading, or cumulative.

This case is about Mr. Briguet's relationship with UBS and whether he sought to conceal that relationship from the IRS and the U.S. government. The bank records are highly probative because they are direct evidence of Mr. Briguet's interactions with the bank and his intention to hide his account from the government, as well as the balance in the account and the income earned in the account. The records are thus the best available evidence as to the key issues in the case. They are not unfairly prejudicial, as they do not suggest any improper ground for decision to the jury. Thus, Mr. Briguet's argument that the bank records should be excluded under Rule 403 is without merit.

### C. The bank records are business records and thus are not excludible as hearsay.

The account statements are not excluded as hearsay because they are records of a regularly conducted activity – that is, business records. F.R.E. 803(6). "Rule 803(6) 'favor[s] the admission of evidence rather than its exclusion if it has any probative value at all,'" *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) (quoting *In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981)). "[T]he 'rules on hearsay should be read to exclude unreliable hearsay but to admit reliable hearsay . . . . [S]uch 'reliable hearsay' has, of course, the effect of promoting the truth-seeking function of a criminal trial and, therefore, ought to be presented to the finders of facts.'" *United States v. Hill*, No. 12-cr-214, 2014 WL 198813, at *3 (E.D.N.Y. Jan. 14, 2014) (quoting *United States v. Carneglia*, 256 F.R.D. 384, 392 (E.D.N.Y. 2009)). The same reasoning applies in civil trials.

The bank records meet the requirements of Rule 803(6). "[T]he 'principal precondition' to admissibility 'is that the record[] [has] sufficient indicia of trustworthiness to be considered reliable.'" *Phoenix Assocs.*, 60 F.3d at 101 (quoting *Saks Int'l v. M/V "Export Champion"*, 817 F.2d 1011, 1013 (2d Cir. 1987)) (alterations in *Phoenix Assocs.*). The record must have been made at or near the time of the statement by someone with knowledge, and made and kept in the course of a regularly conducted activity, and these facts must be affirmed by a custodian certification. F.R.E. 803(6). "[T]here is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity's regular practice to get information from such a person." *Saks Int'l*, 817 F.2d at 1013 (citations omitted).

Each requirement is satisfied. The UBS records were made by someone with knowledge of the matters recorded – the UBS employees who created the records. The records were kept in the course of UBS's regularly conducted activities, banking and servicing client accounts, and

UBS's regular practice was to create records as it conducted its banking activities. And the government has submitted a declaration from Britta Delmas, Legal Counsel for UBS, that meets these requirements (attachment A) and satisfies Rule 902(12). While Ms. Delmas's declaration is not specific to Mr. Briguet's documents, but there is no requirement that the custodian speak specifically to the documents at issue. "'The custodian need not have personal knowledge of the actual creation of the document' to lay a proper foundation." *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) (quoting *Phoenix Assocs.*, 60 F.3d at 101).

Further, admission is consistent with the purposes of the exception. "The purpose of the [business records] rule is to ensure that documents were not created for 'personal purpose[s] . . . or in anticipation of any litigation' so that the creator of the document 'had no motive to falsify the record in question.'" *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (quoting *United States v. Freidlin*, 849 F.2d 716, 719 (2d Cir. 1988)). Business records are presumed reliable because: "First, businesses depend on such records to conduct their own affairs; accordingly, the employees who generate them have a strong motive to be accurate and none to be deceitful. Second, routine and habitual patterns of creation lend reliability to business records." *United States v. Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993) (citing *United States v. Rich*, 580 F.2d 929, 938 (9th Cir. 1978)). As stated in Ms. Delmas's declaration, and as is clear from the documents, these are UBS internal financial records, contemporaneous communication logs, and account administrative materials, all of which were created for business purposes and in the ordinary course of business, not in anticipation of litigation.

In light of the indicia of reliability, the foundation established by the documents and custodian certification, and the strong preference for admission of probative material as business records in this Circuit, the bank records are admissible as business records under Rule 803(6).

### D. Alternatively, the bank records are admissible under the residual hearsay exception.

In the alternative, the bank records are admissible under the residual hearsay exception, Rule 807(a). Under this rule, a statement is not excluded as hearsay if the statement is supported by sufficient guarantees of trustworthiness in light of the totality of the circumstances, and it is more probative than any other evidence that the proponent can offer through reasonable effort. Details of Mr. Briguet's interactions with UBS, and statements he made to the bank about wanting to keep his account confidential, are highly probative, and the government does not possess and could not reasonably obtain any other evidence that is equally probative.

The Second Circuit has stated that evidence should be evaluated for qualification under the residual hearsay exception based on the extent to which it presents the "four classic hearsay dangers," which are "(1) insincerity, (2) faulty perception, (3) faulty memory, and (4) faulty narration," *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 232-33 (2d Cir. 1999). "[A] hearsay statement need not be free from all four categories of risk to be admitted under Rule 807." *Id.* at 233. Bank records, including those at issue here, address these factors and are thus admissible under this exception. Because banks rely on accurate records to conduct financial transactions and provide customer services, courts have recognized that bank records are likely to be accurate and trustworthy, addressing the first two hearsay dangers, insincerity and faulty perception, as well as the fourth, faulty narration. As courts have observed, "[b]ank records 'provide circumstantial guarantees of trustworthiness because' they are relied on by 'banks and their customers for their accuracy in the course of business.'" *United States v. Prevezon Holdings, Ltd.*, 319 F.R.D. 459, 465-66 (S.D.N.Y. 2017) (quoting *United States v. Pelullo*, 964 F.2d 193, 202 (3d Cir. 1992)). As to faulty memory, the records were made at or near the time of the statement, minimizing the danger that the statements recorded might have been misremembered.

Indeed, numerous courts have recognized that bank records are highly trustworthy and admissible under the residual hearsay exception. *See, e.g., Karme v. Commissioner*, 673 F.2d 1062, 1064-65 (9th Cir. 1982) (affirming admission of bank records under the residual hearsay exception); *Prevezon Holdings*, 319 F.R.D. at 465-66 (same); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 691-92 (S.D.N.Y. 2014) (receiving bank records as business records and, in the alternative, under the residual hearsay exception); *United States v. Turner*, 718 F.3d 226, 233-35 (3d Cir. 2013) (affirming admission of foreign bank documents under residual hearsay exception); *Singh v. Commissioner*, 713 F. App'x 643, 644 (mem.) (9th Cir. 2018) (affirming admission of bank records and quoting *Karme*, 673 F.2d at 1065, regarding "'circumstantial guarantees of trustworthiness'"); *United States v. Jacobs*, 61 F.3d 901, at *1-2 (tbl.) (4th Cir. July 25, 1995) (holding that wire transfer records are admissible under residual exception). Indeed, "'a foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, *particularly in the case of bank and similar statements*.'" *United States v. Pelullo*, 964 F.2d 193, 202 (3d Cir. 1992) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(6)[02], at 803-178) (emphasis in *Pelullo*).

The bank records at issue here are exactly the type of records that provide circumstantial guarantees of trustworthiness. Financial systems rely on the accuracy of documents such as those that show Mr. Briguet's financial information, including his account balances and income, and UBS relies on accurate records of communications with accountholders to provide customer service. Nor can the government reasonably obtain similar evidence. The documents are thus admissible under the residual hearsay exception.

### E. Mr. Briguet's statements memorialized in the bank records are also admissible.

A statement of a party opponent is not hearsay. F.R.E. 801(d)(2)(A). Statements made by Mr. Briguet recorded in the bank records are therefore not hearsay if they are offered by the United States against Mr. Briguet, *See United States v. Cummings*, 858 F.3d 763, 773 (2d Cir. 2017) ("[A] statement is not hearsay if it is 'offered against an opposing party and . . . was made by the party in an individual . . . capacity.'") (quoting F.R.E. 801(d)(2)(A); alterations in *Cummings*); *United States v. Hough*, No. 2:13-cr-72, 2013 WL 5671300, (M.D. Fla. Oct. 17, 2013) at *2 ("Statements in the bank records attributed to defendant Hough are not hearsay.") (citing F.R.E. 801(d)(2)(A)).

### F. Addressing admissibility now will facilitate an efficient trial.

Because the bank records at issue are highly probative of the material dispute in this case, they are key evidence in the government's case. Accordingly, resolving the question of their admissibility now will facilitate the efficient presentation of evidence. If the Court rules on their admissibility in advance of trial, the parties could determine whether to use portions of the documents during their opening statements. Further, because of the importance of these documents, a pre-trial ruling as to admissibility would allow the parties to plan a more efficient overall presentation of the evidence.

The UBS records are highly probative, minimally prejudicial, and are not excluded under the rule against hearsay; nor are statements made by Mr. Briguet recorded in those records excluded under that rule. The documents are therefore admissible.[2]

---

[2] In the event that the Court determines that the government has not demonstrated a sufficient foundation to establish that the bank records are admissible, the government requests that it be afforded an opportunity to establish the admissibility of these documents at trial by other means.

**II.     The parties and witnesses should be barred from disclosing the amount of the penalty at issue to the jury.**

The United States moves *in limine* for an order barring the parties and witnesses from disclosing to the jury the amount of the penalty at issue in this case.  The sole question for the jury is whether Mr. Briguet acted willfully in failing to file an FBAR.  Disclosure of the amount of the penalty invites the jury to evaluate whether the penalty is appropriate and suggests the possibility of jury nullification if they believe it is disproportionate to the conduct at issue.

For this reason, it is standard in criminal cases that juries not be informed of the penalties that would attach if they find a defendant guilty.  The Supreme Court has explained that not only is "[i]nformation regarding the consequences of a verdict . . . irrelevant to the jury's task," but providing that information to the jury "invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  *Shannon v. United States*, 512 U.S. 573, 579 (1994).

These principles hold true here as well.  Mr. Briguet has not raised any argument that the IRS abused its discretion in determining the amount of the penalty or that any administrative requirements were not satisfied.  His sole defense is that the government cannot prove willfulness.  Thus, the jury's sole task will be to determine whether his failure to report the accounts was in fact willful.  The amount of the penalty is irrelevant to his state of mind at the time of the violation.  *See United States v. Wilkerson*, No. 2:16-cr-218, 2017 WL 5616364, at *11 (S.D.W. Va. Nov. 21, 2017) ("[A]ny potential penalty Defendant might face does not make any fact in this case more or less probable and is not of consequence in determining the action.") (citing F.R.E. 401).

Indeed, courts often minimize the information about damages that is presented to juries, either by bifurcating trials so that the consideration of liability can be done separate from

determining the consequences of liability, or, where a fixed penalty or heightened penalty is at issue, barring the disclosure of the penalty amount to the jury. *See, e.g., HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45 (2d Cir. 1994) ("Reference to treble damages and attorneys fees is irrelevant to the jury questions of liability and damages and may tend to confuse or prejudice a jury into reducing its eventual award."); *Goodwine v. Nat'l R.R. Passenger Corp.*, No. 12-cv-3882, 2014 WL 1010928, at *4 (E.D.N.Y. Mar. 17, 2014) (granting motion *in limine* to bar discussion of damages during liability phase of trial); *Mineo v. City of New York*, No. 09-cv-2261, 2013 WL 1334322, at *2 (E.D.N.Y. Mar. 29, 2013) ("Bifurcation is warranted 'when the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination.'") (quoting *Helminsky v. Ayerst Labs.*, 766 F.2d 208, 212 (6th Cir. 1985)); *Wisdom v. Undercover Police Officer No. C0127*, 879 F. Supp. 2d 339, 342 (E.D.N.Y. 2012) (granting motion to bifurcate trial to prevent prejudice during liability phase); *Lagudi v. Long Island R. Co.*, 775 F. Supp. 73 (E.D.N.Y. 1991) (bifurcating trial to prevent prejudice from damages evidence); *Casaretto v. GEICO Cas. Co.*, No. 16-cv-285, 2017 WL 7693513, at *2 (D. Colo. May 26, 2017) ("[T]he Court agrees that statutory penalties are not relevant to the issues the jury must decide.") (citations omitted); *Seidman v. Am. Family Mut. Ins. Co.*, No. 14-cv-3193, 2016 WL 8201768, at *3 (D. Colo. Sept. 13, 2016) ("[T]he statutory penalty is not relevant to the jury's deliberations.") (citation omitted); *Toy v. Am. Family Mut. Ins. Co.*, No. 12-cv-1683, 2014 WL 486173, at *1 (D. Colo. Feb. 6, 2014) ("Defendant fails to show that the penalty . . . has any probative value on the issue of whether defendant unreasonably delayed or denied payment of the covered benefit.") (citing F.R.E. 401).

Disclosing a potential penalty to a jury may be appropriate if the penalty relates to an issue charged to the jury, such as the motivation of a witness to lie, or if disclosure is necessary

to correct a misapprehension. *See, e.g., Vinieris v. Byzantine Maritime Corp.*, 731 F.2d 1061, 1065 (2d Cir. 1984) (holding that statutory penalty of $144,000 should have been disclosed where plaintiff's counsel argued to the jury that plaintiff was seeking only $1,400, to correct misapprehension and because the amount of the penalty was known to one of the parties at the time of the incident and thus bore on his state of mind). But there are no such concerns here. The plaintiff in this case is the government, which brought this suit in the interests of justice, not for financial reward. Employees of the IRS who testify in this matter are doing so in the course of their employment and will not receive a financial benefit if the jury finds in favor of the government, let alone any benefit tied to the amount of the penalty. Thus, the amount of the penalty does not provide the government's witnesses with motivation to lie. (It does provide Mr. Briguet with a motive to lie, but the government will forgo this argument, as the potential prejudice that disclosure of the penalty may cause substantially outweighs its probative value as to his veracity.) *See HBE Leasing Corp. v. Frank*, 22 F.3d 41, 46-47 (2d Cir. 1994) (distinguishing *Vinieris* and holding that it was proper for trial court to preclude references to treble damage provision).

Informing the jury of the consequences of their verdict would invite the jury to base their decision on their desired consequences rather than the facts presented at trial and could threaten confusion. *See United States v. Smith*, No. 06-cr-682, 2008 WL 11438034, at *3 (N.D. Ill. Jan. 23, 2008) ("The Government correctly argues that the only purpose of mentioning potential penalties faced by Defendants to the jury would be the purpose of jury nullification."). Information as to the penalty is thus properly excluded from the trial.

### III. The United States should be permitted to examine Kenneth Erdheim, Mr. Briguet's long-time accountant, with leading questions.

Kenneth Erdheim is a friend of Mr. Briguet and was his long-time accountant and tax preparer. He was a periodic guest at a restaurant owned by Mr. Briguet, where he "would get lunch, a really good lunch and wine." Erdheim Dep. at 40:7-14 (attachment G). And Mr. Erdheim was also hired to teach Mr. Briguet's son, Christopher, how to be an office manager and how to keep books of account. *Id.* at 46:12-23. Mr. Erdheim has been preparing Mr. Briguet's tax returns since the late 1990's. *Id.* at 66:2-8. And Mr. Erdheim apparently met with and signed a declaration prepared by Mr. Briguet's attorneys. *Id.* at 11:14-17, 65:1-66:13.

While generally, leading questions should not be used on direct examination, *United States v. Salameh*, 152 F.3d 88, 127-28 (2d Cir. 1998), a party should ordinarily be permitted to use leading questions when examining a "witness identified with an adverse party." Rule 611(c). Before Rule 611(c), leading questions could be asked on direct examination of witnesses who were either "actually hostile" or else "an adverse party, officer, director, or managing agent of such adverse party." *Haney v. Mizell Memorial Hosp.*, 744 F.2d 1467, 1477 (11th Cir. 1984). By adding the new category of "a witness identified with an adverse party," Rule 611(c) "significantly enlarged the class of witnesses presumed hostile, 'and therefore subject to interrogation by leading questions without further showing of actual hostility.'" *Id.* at 1477-78 (quoting *Ellis v. City of Chicago*, 667 F.2d 606, 613 (7th Cir. 1981)). Further, "the language of Federal Rule of Evidence 611(c) expressing a preference for non-leading questions is only precatory and, . . . generally trial judges are afforded a large degree of discretion in overseeing the examination of witnesses." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 757 (2d Cir. 2004).

Case 2:17-cv-03482-RJD-SIL   Document 41   Filed 03/09/20   Page 16 of 18 PageID #: 152

"[A]n agent, friend, relative, or an employee certainly qualifies as 'identified with the adverse party.'" *Stewart v. Hooters of Am.*, No. 8:04-cv-40, 2007 WL 3528685, at *7 (M.D. Fla. Nov. 15, 2007) (quoting *Haney*, 744 F.2d at 1478); *see also Vanemmerik v. The Ground Round*, No. 97-cv-5923, 1998 WL 474106, at *1 (E.D. Pa. July 16, 1998) ("The normal sense of a person 'identified with an adverse party' has come to mean, in general, an employee, agent, friend, or relative of an adverse party") (citations omitted). This has been applied to a plaintiff's former "agent-accountant" when questioned by defense counsel in light of their years-long agency relationship, even though that relationship had ended five years before the trial. *See Stewart*, 2007 WL 3528685, at *7; *see also United States v. McLaughlin*, No. 95-cr-113, 1998 WL 966014, at *1 (E.D. Pa. Nov. 19, 1998) (permitting the use of leading questions to examine a witness who was the defendant's accountant and tax preparer).

Beyond his years-long friendship and agency relationship with Mr. Briguet, Mr. Erdheim is a witness identified with Mr. Briguet in light of his involvement in the events underlying this action. At Mr. Briguet's behest, Mr. Erdheim prepared tax returns that have false statements regarding Mr. Briguet's foreign bank accounts. And as with agents, courts have held that employees are identified with an adverse party when the employee saw or had some involvement in the facts underlying the action. *See, e.g., Haney*, 744 F.2d at 1478 (holding that trial court erred in barring use of leading questions to examine employee of defendant who was present at time of alleged malpractice, as she was "identified with an adverse party"); *Ellis*, 667 F.2d at 613 (same as to employees of city defendant who were present during portions of underlying incident and worked closely with defendant, as they were "identified with an adverse party"); *Davies v. Benbenek*, No. 12-C-45, 2014 WL 12660537, at *1 (N.D. Ill. May 28, 2014) (permitting leading questions in similar circumstance).

Because Mr. Erdheim is a long-time friend of Mr. Briguet, was paid by Mr. Briguet for many years to prepare his tax returns (including returns with false statements as to the bank accounts at issue in this case), and was employed by Mr. Briguet to teach Mr. Briguet's son bookkeeping and accounting, Mr. Erdheim is identified with Mr. Briguet. The United States should thus be permitted to use leading questions to examine Mr. Erdheim.

### IV. Conclusion

For the reasons stated above, the government requests that the Court (a) hold that the UBS records, government's proposed exhibits 4-8, are admissible; (b) order that the parties and witnesses are not to disclose the amount of the penalty at issue to the jury; and (c) permit the government to examine witness Kenneth Erdheim with leading questions.

Respectfully submitted,

*/s/ Arie M. Rubenstein*
ARIE M. RUBENSTEIN
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-307-6588 (v)
202-514-5238 (f)
Arie.M.Rubenstein@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 14, 2020, in accordance with Section III.D.1 of the Court's Individual Motion Practices, I sent a hard copy of the attached document and exhibits by overnight courier to:

    Juliet Fink
    Kostelanetz & Fink, LLP
    250 Greenwich Street, 34th floor
    New York, New York  10007

                                                */s/ Arie M. Rubenstein*
                                                ARIE M. RUBENSTEIN
                                                Trial Attorney, Tax Division