UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
                                       )
  UNITED STATES OF AMERICA,            )   Case No. 2:17-cv-3482-RJD-SIL
                                       )
        Plaintiff,                     )   The Hon. Raymond J. Dearie, U.S.D.J.
                                       )
        v.                             )   The Hon. Steven I. Locke, U.S.M.J.
                                       )
  GEORGES BRIGUET,                     )
                                       )
        Defendant.                     )
_____)


**PLAINTIFF UNITED STATES' REPLY IN SUPPORT OF
THE UNITED STATES' MOTIONS *IN LIMINE***

## **TABLE OF CONTENTS**

I.  **The UBS records, proposed exhibits 4-8, are admissible.** ................................................... 1

    A.    Use of the UBS records is proper under the Swiss tax treaty. ......................................... 1

        1.    Mr. Briguet lacks standing to complain about a violation of the treaty. ...................... 1

        2.    The FBAR is part of tax administration, and thus treaty information can be used in FBAR cases. ...................................................................................................... 2

        3.    This case is about Mr. Briguet's tax evasion, not mere failure to file a form. ............. 5

    B.    The UBS contacts log is highly relevant and is not excludible as hearsay. ..................... 6

        1.    Mr. Briguet's efforts to conceal his account from the government are highly relevant to his liability for the FBAR penalty. ............................................................ 6

        2.    The contacts log is not excludible as hearsay. .............................................................. 7

        3.    Mr. Briguet's own testimony and other evidence clarify and confirm the accuracy of the statements in the contacts log. ............................................................................ 7

    C.    Other courts have admitted similar UBS records. ............................................................ 9

II.  **Mr. Briguet raises no argument that the penalty at issue is relevant to any matter before the jury.** ............................................................................................................. 10

III.  **Kenneth Erdhiem, Mr. Briguet's long-time accountant and friend, is identified with him, and thus leading questions are appropriate.** ............................................................ 10

**I.      The UBS records, proposed exhibits 4-8, are admissible.**

The UBS documents are relevant, reliable, and otherwise admissible. Mr. Briguet's claim that the UBS documents are being used contrary to the Swiss tax treaty is meritless; regardless, he lacks standing to complain about a treaty violation. His argument that the contacts log is confusing and contains hearsay lacks any factual or legal basis.

      **A.      Use of the UBS records is proper under the Swiss tax treaty.**

           1. *Mr. Briguet lacks standing to complain about a violation of the treaty.*

Mr. Briguet lacks standing to complain about a violation of the U.S.-Switzerland tax treaty. Supreme Court and Second Circuit precedent make clear that "absent explicit treaty language conferring individual enforcement rights, treaty violations are generally addressed by the signatory sovereigns through diplomatic channels." *United States v. Rommy*, 506 F.3d 108, 129 (2d Cir. 2007) (citation omitted). A treaty is "primarily a contract between two or more independent nations," *Whitney v. Robertson*, 124 U.S. 190, 194 (1888), and "it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress." *United States v. Zabaneh*, 837 F.2d 1249, 1261 (5th Cir. 1988) (citations omitted). Thus, a treaty is presumed not to create a privately enforceable right unless it explicitly provides one. See *Mora v. New York*, 524 F.3d 183, 201-02 & n.25 (2d Cir. 2008) (collecting cases).

Mr. Briguet does not even allege that the Swiss tax treaty indicates an intent to "establish direct, affirmative, and judicially enforceable rights." *United States v. Mann*, 829 F.2d 849, 852 (9th Cir. 1987) (citation omitted). Indeed, no provision of the Swiss tax treaty provides any right of action in respect of the exchange of information. *Cf. Harvey v. Commissioner*, T.C. Memo. 1999-229, 1999 WL 482626, at *13 (Tax Court July 12, 1999) (taxpayer lacked standing to assert that the IRS violated the Cayman Islands tax treaty by using bank records obtained from the Cayman Islands) (citing *Mann*, 829 F.2d at 852-53). *See United States v. Bussell*, 699 F.

App'x 695, 697 (9th Cir. 2017) (mem.) (holding that FBAR defendant cannot complain about introduction of bank documents in violation of Swiss treaty) (citing *Mann*, 829 F.2d at 852).

Even if the government's use of the documents violated the Swiss tax treaty – which, as discussed below, it does not – redress would be left to the political process between the governments of Switzerland and the United States.[1]  Exclusion of otherwise-probative evidence is not an appropriate remedy.  Suppression may be warranted where constitutional rights are violated, but is clearly inappropriate for otherwise-unactionable violations of international treaties that do not create individual rights.  *See Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence, however, has always been our last resort, not our first impulse.").

> 2. *The FBAR is part of tax administration, and thus treaty information can be used in FBAR cases.*

The Swiss tax treaty permits the disclosure of treaty information in cases involving "the assessment, collection, or administration of" taxes.  Art. 26 § 1.  The FBAR and other self-reporting mechanisms – whether under the Internal Revenue Code (26 U.S.C.) or under the Bank Secrecy Act or other statute – play a crucial role in U.S. tax administration:  Domestic financial institutions are required to report to the IRS information on their U.S. accountholders' income, but Congress cannot require foreign institutions to report U.S. taxpayers' income to the IRS.  The integrity of the tax system thus depends on taxpayers self-reporting their foreign accounts and income, including on the FBAR and on tax returns.  Without these reports, the IRS can be

---

[1] The government's use of UBS materials in FBAR cases has been known to Switzerland for more than a decade, ever since Switzerland and UBS first agreed to provide those materials. *See U.S. Discloses Terms of Agreement with Swiss Government Regarding UBS*, Press Release (Aug. 19, 2009), *available at* https://www.justice.gov/opa/pr/us-discloses-terms-agreement-swiss-government-regarding-ubs ("Information provided to the IRS through this process will be thoroughly examined for all potential civil and criminal tax violations.  The IRS will assess any additional tax, interest and a number of applicable penalties.  This includes the penalty for the willful failure to file a Report of Foreign Bank and Financial Accounts (FBAR).").

unaware of foreign accounts and thus unable to make accurate income assessments or collect tax due. Information provided by the FBAR can be used to identify unreported income (such as the income Mr. Briguet failed to report here).

Fighting tax evasion is one of the major goals of the FBAR. The FBAR was passed as part of the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.*, and is codified in Title 31, but its legislative history shows that the FBAR was intended to play a key role in preventing tax evasion. *See* S. Rep. 91-1139 at 3 (1970) (identifying avoidance of capital gains tax as the first in a list of illicit uses of secret foreign accounts); *see also id.* at 4 ("The basic foundations of our entire tax system are eroded when white collar criminals are able to evade taxes by concealing their income in a secret foreign bank account. Confidence in the fairness of our tax system can only be weakened if we permit these violators to flout our tax laws with impunity."); H.R. Rep. 91-975, 1970 WL 123258, at 12 ("It has been estimated that hundreds of millions in tax revenues have been lost."); *id.* at 12-13 ("One of the most damaging effects of an American's use of secret foreign financial facilities is its undermining of the fairness of our tax laws."). *See generally California Bankers Ass'n v. Shultz*, 416 U.S. 21, 27-29 (1974) (discussing legislative history of the Bank Secrecy Act, including the prevention of tax evasion) (quoting H.R. Rep. 91-975). Thus, authority to investigate FBAR violations and assess the FBAR penalty has been delegated to the IRS. 31 C.F.R. § 1010.810(g). *See In re Grand Jury Subpoena Dated February 2, 2012*, 741 F.3d 339, 348 n.5 (2d Cir. 2013) (observing that the IRS uses the Bank Secrecy Act for revenue collection purposes).

Courts have explicitly rejected Mr. Briguet's argument that the FBAR statute is not related to tax administration because it is found in Title 31, not Title 26. *See Whistleblower 21276-13W v. Commissioner*, 147 T.C. 121, 130 & n.13 (2016) ("Moreover, we disagree that

internal revenue laws are limited to laws codified in title 26."); *see also Bedrosian v. United States*, 912 F.3d 144, 149 & n.1 (3d Cir. 2018) (expressing skepticism of this "elevation of form over substance" and observing that internal revenue laws "are defined by their function and not their placement in the U.S. Code.") (citing *Wyodak Res. Dev. Corp. v. United States*, 637 F.3d 1127, 1134 (10th Cir. 2011)).

Indeed, the Third Circuit concluded that the FBAR statute is "part of the IRS's machinery for the collection of federal taxes," *Bedrosian*, 912 F.3d at 151. In that case, the IRS assessed an FBAR penalty against the plaintiff; he paid a small percentage and sued in district court for a refund. The government counterclaimed for the remainder. Jurisdiction might lie under the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), and if so, an appeal would go to the Federal Circuit unless the FBAR statute "provid[es] for internal revenue." 28 U.S.C. § 1295(a)(2).

The court held that the FBAR statute is a part of the tax system and thus that it "provid[es] for internal revenue." *Bedrosian*, 912 F.3d at 151. The court observed that the FBAR statute was enacted as part of the Bank Secrecy Act of 1970, "which was intended to promote, among other things, the collection of federal taxes." *Id.* at 150-51 (citing 31 U.S.C. § 5311 and *United States v. Chabot*, 793 F.3d 338, 344 (3d Cir. 2015)). The court noted that in passing the Bank Secrecy Act, "Congress was particularly concerned with '[s]ecret foreign financial facilities, particularly in Switzerland,' that offered the wealthy a 'grossly unfair' but 'convenient avenue of tax evasion.'" *Id.* at 151 (citing H.R. Rep. No. 91-975 at 13 (1970)). The court further observed that the IRS was delegated the authority to enforce the FBAR statute, *id.* (citing 31 C.F.R. § 1010.810(g)), and "has developed a comprehensive scheme for enforcing and assessing the FBAR penalty," *id.* (citing Internal Revenue Manual §§ 4.26 & 8.11.6). Thus, the FBAR is "part of the IRS's machinery for the collection of federal taxes," *id.* at 151.

The FBAR penalty is not a tax, but the FBAR statute is part of tax administration. The cases cited by Mr. Briguet (Def. Mem. at 4-5) are thus inapposite. *See Hom v. United States,* No. 13-cv-2243, 2013 WL 5442960, at *1-2 (N.D. Cal. Sept. 30, 2013) ("The United States argues that Section 5314 [the FBAR statute] is a 'related statute' under Section 6103[(b)(4), defining "tax administration"]. This is correct. Congress intended for Section 5314 to fall under 'tax administration.'") (citations omitted).

        3.   *This case is about Mr. Briguet's tax evasion, not mere failure to file a form.*

For decades, Mr. Briguet hid his Swiss bank account from the IRS and avoided paying taxes on his income. The IRS first learned of Mr. Briguet's account through information provided by UBS pursuant to the U.S.-Switzerland Tax Treaty as part of the IRS's efforts to identify tax evaders. And indeed, Mr. Briguet was evading taxes using his Swiss account. IRS agents confronted Mr. Briguet, and when he repeatedly lied to them about the account, he was charged with, and pled guilty to, corruptly endeavoring to obstruct or impede the federal tax system. Mr. Briguet paid as restitution a portion of the taxes he had failed to pay. The IRS also assessed an FBAR penalty against Mr. Briguet. That penalty is at issue here.

Mr. Briguet did not file FBARs and he did not report his account on his tax returns. Mr. Briguet maintained his account for decades, during which time he avoided paying taxes on the income in the account. (In addition, Mr. Briguet is unable or unwilling to explain the source of the millions of dollars in the account.) A major purpose of the FBAR is to prevent this type of tax evasion, and that is why the IRS assessed Mr. Briguet with a civil penalty. Indeed, the IRS explicitly determined that Mr. Briguet's failure to file an FBAR was in furtherance of tax violations. *See* Attachment A (summarizing the IRS's determination).

Mr. Briguet seeks to elide his history of tax evasion and focus the Court and the jury on what he will argue is a technical failure to file an obscure form. This ignores the purpose of the

statute, the intent of Congress, and the structure of the tax system.  For forty or more years, Mr. Briguet dodged his taxes through his secret accounts.  IRS personnel discovered his account via documents obtained from UBS through the Swiss tax treaty.  Mr. Briguet was charged with (and pleaded to) a felony violation of the Internal Revenue Code, and the IRS assessed Mr. Briguet with an FBAR penalty.  His claim that this case has no connection to his tax crimes is baseless.

### B. The UBS contacts log is highly relevant and is not excludible as hearsay.

Mr. Briguet's objections notwithstanding, the UBS contact log, proposed Exhibit 5, is highly relevant to this matter and is not excluded by the rule against hearsay.

#### 1. *Mr. Briguet's efforts to conceal his account from the government are highly relevant to his liability for the FBAR penalty.*

Mr. Briguet is liable for the FBAR penalty if he sought to avoid learning whether he had to report his account or whether he was reckless as to the possibility of a reporting requirement, regardless of whether he knew about the FBAR itself.  *See United States v. McBride*, 908 F. Supp. 2d 1186, 1205 (D. Utah 2012) ("Willfulness may also 'be proven through inference from conduct meant to conceal or mislead sources of income or other financial information.'") (quoting *United States v. Sturman*, 951 F.2d 1466, 1476-77 (6th Cir.1991)); *United States v. Flume*, 390 F. Supp. 3d 847, 854 (S.D. Tex. 2019) ("Willful blindness – as where a defendant consciously chooses to avoid learning about reporting requirements – is also a form of recklessness."); *United States v. Ott*, No. 18-cv-12174, 2020 WL 913814, at *6-7 (E.D. Mich. Feb. 26, 2020) (Defendant's efforts to conceal his foreign accounts from the government by using a foreign mailing address support a finding of recklessness and therefore willfulness); *United States v. Garrity*, No. 3:15-cv-243, 2018 WL 2465354, at *2 (D. Conn. June 1, 2018) ("The government may prove willful blindness with evidence that Mr. Garrity, Sr. made a 'conscious effort to avoid learning about reporting requirements.'") (quoting *Williams*, 489 F.

App'x at 659). Thus, documents that show Mr. Briguet intentionally concealed his account from the government are highly relevant to the jury's determination.

2. *The contacts log is not excludible as hearsay.*

As discussed in the government's opening brief, the contacts log and other UBS documents are admissible as business records and, in the alternative, under the residual hearsay exception. While Mr. Briguet mentions the custodian certificate, the substance of his response appears to be directed to the dangers of confusion and unfair prejudice, not the qualification of the document as a business record. *See* Def. Mem. at 6 (citing F.R.E. 401 and 403). Similarly, Mr. Briguet cites Rules 801 and 802 of the Federal Rules of Evidence, but his hearsay complaints appear to be directed to statements memorialized in the contact log, not the contact log itself. Regardless, Mr. Briguet does not raise any challenge to the validity of the custodian certificate or any reason to exclude the document itself on the ground of hearsay. The contact log is thus admissible, pending the double-hearsay status of the statements in the log.

Mr. Briguet complains about the hearsay status of his statements recorded in the log, but fails to address Rule 801(d)(2)(A), which provides that a statement of a party opponent is not hearsay. Statements made by Mr. Briguet recorded in the bank records are therefore not hearsay if they are offered by the United States against Mr. Briguet. *See United States v. Cummings*, 858 F.3d 763, 773 (2d Cir. 2017); *United States v. Hough*, No. 2:13-cr-72, 2013 WL 5671300 (M.D. Fla. Oct. 17, 2013) at *2 ("Statements in the bank records attributed to defendant Hough are not hearsay.") (citing F.R.E. 801(d)(2)(A)).

3. *Mr. Briguet's own testimony and other evidence clarify and confirm the accuracy of the statements in the contacts log.*

Mr. Briguet's annotated draft of the contacts log raises questions about the contents of the document, but these questions are rhetorical; Mr. Briguet knows the answers. For example, Mr.

Briguet testified at his deposition that his brother, Paul, was a banker with a bank called Raiffeisen, and that Paul took over management of Mr. Briguet's UBS account in 1977. Briguet Dep. at 40:17-42:11 (attached as Attachment B). The contacts log states: "Customer leaves for the USA on 1.12.2004. He informs me that he will have the basic documents submitted by his brother, dir. Of Raiffeisen." Def. Mem. ex. B at 3. Mr. Briguet's annotated version asks: "Who is '[c]ustomer'?" and "Who is 'his brother, dir. Of Raiffeisen'?" The jury can draw the obvious inferences: "customer" is Mr. Briguet, and "brother" refers to Paul Briguet, a director at the bank Raiffeisen. Mr. Briguet understands this, and the jury will as well.

The most significant portion of the contacts log is the last entry, dated August 8, 2008:

> Today I received a visit from the holder of the [banking] relationship [Mr. Briguet's account number] . . . The holder is Swiss but domiciled in the USA (W9 unsigned)  The client closely followed the published events on the UBS business policy for US customers. **The latter consulted a lawyer, aware of our change of policy, and fearing for the confidentiality of his account.** He decided against his intuition to close the [banking] relationship (a very long-term relationship). . . .  Still owns a restaurant in N.Y.  Wants to buy stocks. In particular, it will be done in another bank . . . .

Exhibit B to Def. Mem. at 7-8 (emphasis added). This statement is highly relevant to the determination to be made by the jury: whether Mr. Briguet intended to hide his account from the government. And there is no doubt that Mr. Briguet is the "holder" and "client" discussed here. He is "Swiss but domiciled in the USA" and "owns a restaurant in New York" and "fear[s] for the confidentiality of his account." Mr. Briguet admits that that same day, he signed a letter stating: "Following our interview today, please close account no. [account number] and send the available balance in CHF . . . ."[2]  Attachment E.2 to the government's opening brief at USAProd-001109; *see* Briguet Dep. at 86:4-87:8 (admitting he signed the letter). And Mr. Briguet's

---

[2] The translation mis-transcribes the account number; it is correct in the original. *See* Attachment E.1 to the government's opening brief at USAProd-000080.

statement in the log is a statement of a party opponent, and so is not hearsay.  F.R.E. 801(d)(2)(A).  The jury can certainly understand the log entry.  Mr. Briguet does not want them to see it because it demonstrates his liability, not because it is confusing.

   **C.  Other courts have admitted similar UBS records.**

   Courts have permitted the use of documents obtained from UBS through the Swiss tax treaty.  In *Norman v. United States*, 138 Fed. Cl. 189, 193-94 (2018), Ms. Norman maintained a UBS account and failed to pay taxes on her income or report the account to the IRS.  Like Mr. Briguet, Ms. Norman learned that UBS was preparing to turn over the names of its U.S. accountholders to the IRS.  The court admitted the UBS contacts log, which stated that Ms. Norman called UBS in 2008 to express her displeasure with their new policy and then closed her account.  *Id.*  The UBS contacts log here demonstrates that Mr. Briguet did the same thing.

   The Tax Court recently held in *Harrington v. Commissioner*, No. 13531-18, that documents obtained from UBS under the Swiss treaty were admissible as business records; the undersigned understands this to be the first written decision addressing such documents.  (The order is attached as Attachment C.)  The court examined the business records declaration, which was substantively identical to the declaration at issue here (and made by the same declarant, Britta Delmas) and concluded that the certification was sufficient and the documents are admissible as business records.  *Id.* at 2.

   Just as here, the petitioner in *Harrington* complained that Ms. Delmas was not qualified to certify the business record status of the client contact log, as well as other documents, and that the certification lacked sufficient information to demonstrate that those documents were business records. *Harrington* at 3.  The court rejected this argument: "It is thus not surprising that UBS would retain, as part of its regularly conducted business activity, records of communications with its clients." *Id.* (citation omitted).  The same logic applies to these documents as well.

**II.     Mr. Briguet raises no argument that the penalty at issue is relevant to any matter before the jury.**

In its opening brief, the government demonstrated that the amount of the penalty at issue is not relevant to any matter properly before the jury. Mr. Briguet does not argue to the contrary. Rather, Mr. Briguet seeks to inform the jury of the penalty in the interest of "transparency." Transparency is not a principle of evidence, but relevance is. Absent a reason to believe the penalty is relevant to a matter charged to the jury, the only purpose in disclosing the penalty would be to encourage the jury to evaluate the propriety of the amount of the penalty. Mr. Briguet has raised no legal argument that the jury should be informed of the penalty, and the parties should therefore be directed not to disclose the penalty to the jury.

**III.     Kenneth Erdhiem, Mr. Briguet's long-time accountant and friend, is identified with him, and thus leading questions are appropriate.**

Despite Mr. Briguet's protests, Mr. Erdheim, his employee, long-time accountant, and friend, is clearly "identified with" him, and thus the government should be permitted to question him with leading questions. *See* Rule 611(c). Mr. Erdheim testified that he and Mr. Briguet "got close, and the best part was I would go there every month and I would get lunch, a really good lunch and wine. He always had to serve wine. So we've been friends ever since, and that's how I met George." Erdheim Dep. at 40:9-12 (Attachment G to government's opening brief). Mr. Briguet argues that Mr. Erdheim taught Mr. Briguet's son accounting because he was employed, not because of friendship. Def. Mem. at 11. But this is the point – Mr. Erdheim was also an employee of Mr. Briguet, as well as his friend and accountant. "[A]n agent, friend, relative, or an employee certainly qualifies as identified with the adverse party." *Stewart v. Hooters of Am.*, No. 8:04-cv-40, 2007 WL 3528685, at *7 (M.D. Fla. Nov. 15, 2007) (internal quotation marks omitted). Mr. Erdheim is identified with Mr. Briguet, and thus leading questions are appropriate.

       Respectfully submitted,

       */s/ Arie M. Rubenstein*
       ARIE M. RUBENSTEIN
       Trial Attorney, Tax Division
       U.S. Department of Justice
       P.O. Box 55
       Washington, D.C.  20044
       202-307-6588 (v)
       202-514-5238 (f)
       Arie.M.Rubenstein@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 9, 2020, in accordance with Section III.D.1 of the Court's Individual Motion Practices, I filed a true and correct copy of the foregoing, as well as the United States' Notice of Motions *in Limine* and Memorandum in Support of Its Motions *in Limine* and their associated exhibits, with the Court's electronic filing system, which will send a notification to each registered user.

      */s/ Arie M. Rubenstein*
      ARIE M. RUBENSTEIN
      Trial Attorney, Tax Division